## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**UNITED STATES OF AMERICA,**

**vs.**                                          **Case Nos.:   4:10cr96/RH**
                                                              **4:13cv475/RH/CAS**

**GASPAR BISHOP, a/k/a NIGEL HUMPHREY,**

          **Defendant**

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  (ECF No. 136).  The Government filed a response (ECF No. 138) and Defendant filed a reply.  (ECF No. 141).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

### PROCEDURAL BACKGROUND

Defendant and two others were charged on December 7, 2010, in a five count indictment with various offenses related to fraudulent use of unlawfully obtained credit

and debit account numbers.  Defendant was charged with conspiracy to defraud ("Count One"), unauthorized use of credit and debit card account numbers ("Count Two"), and unlawful possession of credit and debit cards ("Count Five").  (ECF. No. 1).  The offense conduct stemmed from a scheme pursuant to which co-defendant Elizabeth Lail-Caldare stole credit and debit card numbers from customers at a restaurant where she worked as a waitress.  Lail-Caldare used a portable magnetic stripe reader provided by co-defendants Trevor Hubbard and Defendant Bishop to capture and store the information from customers' cards.  Hubbard and Bishop would periodically retrieve the magnetic stripe reader from Lail-Caldare and transfer the fraudulently obtained information onto other cards to produce counterfeit credit and debit cards.  Hubbard and Bishop would then use the counterfeit credit and debit cards to obtain money, gift cards, and merchandise.  (ECF No. 1).  Lail-Caldare was compensated by Hubbard and Bishop for her role in the conspiracy with American Express and Visa gift cards. (ECF No. 58, PSR, ¶ 16).

Defendant entered a plea of guilty pursuant to a written plea agreement and statement of facts on February 17, 2011.  (ECF Nos. 34–36).  The plea proceeding was largely unremarkable.  (ECF No. 91).  Defendant stated that he agreed with everything in the plea agreement and the supplement, although he had some disagreement with the statement of facts, which will be discussed further below.   In sum, however, he agreed that he had participated in the conspiracy as alleged by the Government, he understood the potential sentence he faced, including the fact that no sentence was promised to him, and he indicated his satisfaction with his attorney.

The Final Pre-sentence Investigation Report calculated Defendant's total offense level at 25.  (ECF No. 58).  Defendant's base offense level was 6, and although he received a three-level downward adjustment due to his acceptance of responsibility, he was also assessed a twelve-level upward adjustment due to the quantity of the total intended loss, a six-level upward adjustment due to the number of victims, a two-level adjustment for the use of sophisticated means, and a two-level adjustment for the production of an unauthorized access device (in this case, a debit or credit card).  (ECF No. 58, PSR ¶¶ 34–45).  Defendant's conviction on Count 5 also required that Defendant serve a two-year term of imprisonment consecutive to any sentence imposed on Counts 1 and 2.  (*Id.*, PSR ¶ 46).  Defendant's criminal history category was II.  (*Id.*, PSR ¶¶ 50–52).  Based upon these calculations, including the required two-year consecutive term, Defendant's adjusted guidelines range was 87–102 months.  (*Id.*, PSR ¶ 76).

After a relatively brief proceeding, the court sentenced Defendant to a term of 60 months on Count 1 and a concurrent 63 month term on Count 2, followed by the mandatory consecutive 24 month term for a total of 87 months imprisonment.  (ECF No. 65).  The court also ordered restitution in the amount of $38,454.04, jointly and severally.

Defendant appealed, and appointed counsel Randolph Murrell filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and moved to withdraw.  (ECF

No. 131).[1]  The Eleventh Circuit's independent review of the entire record revealed no arguable issues of merit and it affirmed.   (ECF No. 131).

Defendant timely filed the instant motion to vacate, raising seven grounds for relief.  The Government opposes the motion in its entirety.

**LEGAL ANALYSIS**

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations

---

[1]In his brief, counsel suggested the following issues and standards of review that the court might wish to consider: (1) neither the indictment nor the facts of the case supported a conspiracy charge because no offense against the United States had been alleged or proved; (2) whether the district court committed reversible error when it omitted certain portions of the Rule 11 plea colloquy; (3) whether the district court's calculation of loss and victims was erroneous; and (4) whether Defendant's sentence was reasonable.  (ECF No. 138-1 at 27–31).  Defendant then filed two pro se submissions with the court.  (ECF No. 138-2, 138-3).

omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."  Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground

of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); see also United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two part test also applies to guilty pleas.  Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326

(11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; see also Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); see also Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  Glover v. United States, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.  See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807

(11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v.

United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing

Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d

1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether

counsel was inadequate, but rather whether counsel's performance was so manifestly

ineffective that "defeat was snatched from the hands of probable victory." United States

v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is

framed, under the prevailing case law it is abundantly clear that a moving defendant has

a high hurdle to overcome to establish a violation of his constitutional rights based on

his attorney's performance. A defendant's belief that a certain course of action that

counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); Rosin v. United States,786 F.3d 873 (11th Cir. 2015); Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. Gordon, 518 F.3d at 1301 (citing Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief. *See* Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See* Winthrop–Redin v. United States, 767 F .3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are ... based upon unsupported generalizations") (internal quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239. Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One

Defendant first contends that his sentence was imposed "in violation of the laws of the United States." Specifically, he asserts that the district court did not correctly calculate the advisory guidelines range when it did not address the defense objections

to paragraphs 24, 25, 28 and 35 of the PSR, and to append to the copy of the PSR made available to the BOP a copy of its determinations with respect to these objections in accordance with Federal Rule of Criminal Procedure 32(i)(3)(C).  This claim could have been raised on appeal, and therefore, despite Defendant's attempt to couch his claim as a violation of the laws of the United States by tracking the language of § 2255(a), it is procedurally barred.  It is also without merit.

Defendant asserts that his objections to paragraphs 24, 25, 28 and 35, which related to the loss amount and the number of victims, were critical to the accurate calculation of his advisory guidelines range, and therefore a ruling was mandatory.  The text of the PSR identified these objections as not being resolved and having been left to the Court's discretion at the time of the sentencing hearing.  (ECF No. 58, PSR ¶¶ 104, 106, 109).  Through a scrivener's error, the objections listed under the hearing "Objections that do not affect sentencing–No court findings necessary."  (ECF No. 58 at 27).

The court acknowledged and identified these objections at sentencing, and without significant discussion, found that the "presentence report has it right."  (ECF NO. 92 at 3–4).  After so concluding, the court by extension also concluded that the guidelines calculations in the PSR were also correct.  Thus, regardless of any disagreement Defendant may have had with the court's conclusion,  Defendant's assertion that the court did not calculate his advisory guidelines range before imposing sentence is mistaken.

Defendant also maintains that the Government never met its burden of establishing the "disputed facts" by a preponderance of the evidence.  The record does not reflect any dispute about the facts of the case: rather the dispute was in reference to the application of the guidelines to the facts before the court.  As such, Defendant has shown no basis for relief.

Ground Two

Defendant's second ground for relief rests on the same erroneous premise he relied upon in ground one.  He asserts that because the district court never complied with the mandatory requirements of Federal Rule of Criminal Procedure 32(i)(3)(B), the court lacked jurisdiction to sentence him.  Defendant's attempt to frame this issue in terms of a jurisdictional deficiency does not save this claim.  Thus, even if the issue were cognizable on collateral review, it is without merit.

Ground Three

Defendant next contends that his sentence was imposed in violation of the Sixth Amendment.  Defendant asserts that the district court violated Booker[2] and the Sixth Amendment when it applied the guidelines in a mandatory fashion, and when it applied two-level enhancements for producing/trafficking in unauthorized access devices under U.S.S.G. § 2B1.1(10) [now U.S.S.G. § 2B1.1(b)(11)(B)], and for sophisticated means under U.S.S.G. § 2B1.1(b)(9)(C) [now U.S.S.G. § 2B1.1(b)(10)(C)].  (*See* ECF No. 58, PSR ¶¶ 36, 36a, 37, 99–101).

---

[2]United States v. Booker, 543 U.S. 220 (2005).

This issue, which was raised neither at sentencing nor on appeal, is procedurally barred.  Furthermore, an alleged error in the application of the sentencing guidelines is an assertion of non-constitutional error that is not cognizable in a habeas petition.  Lynn, *supra*. However, as with Defendant's previous claims, even if these issues were cognizable on collateral review, they are without merit.

It appears that Defendant's comparison of his PSR with the current version of the Sentencing Guidelines has engendered some confusion due to intervening amendments.  Defendant contends that  U.S.S.G. § 2B1.1(b)(9)(C) was wrongfully applied to him as it had nothing to do with the charged conduct.  Defendant's argument is misguided.  As noted by the district court at sentencing, application of the sophisticated means enhancement under the former U.S.S.G. §2B1.1(b)(9)(C), which has been recodified as § 2B1.1(b)(10)(C) was proper.  (ECF No. 92 at 3–4); *see also* United States v. Burrington, 648 F.3d 1178, 1199 (11th Cir. 2011)).

Similarly, the enhancement pursuant to U.S.S.G. § 2B1.1(b)(10)(B) [now U.S.S.G. § 2B1.1(b)(11)(B)], for "production or trafficking of any (I) unauthorized access device or counterfeit access device" was proper in light of Defendant's guilty plea to trafficking in unauthorized access devices.  There was no error in the application of either guideline provision as codified at the time of Defendant's sentencing.

Lastly, Defendant contends that the court used the mandatory two year consecutive sentence on Count Five to "justify" the guidelines calculations on Counts One and Two.  The thrust of Defendant's argument is not entirely clear.  The PSR reflected that the mandatory two-year sentence on Count Five would run consecutively

to the terms imposed in Counts One and Two.  (ECF No. 58, PSR ¶ 46).  The advisory

guidelines range for Counts One and Two was calculated without regard to this

mandatory consecutive sentence, and the district court stated at sentencing that the

guidelines range had been correctly calculated.  (*See* ECF No. 58, PSR ¶¶ 34–45; ECF

No. 92 at 4--5).  Defendant has not shown error and he is not entitled to relief.

  Ground Four

   In Ground Four, Defendant contends that his sentence was imposed in violation

of 18 U.S.C. § 3553 and two controlling Supreme Court decisions due to the district

court's failure to make an individualized assessment of the sentence it imposed.  *See*

Gall v. United States, 128 S.Ct. 586 (2007);  Rita v.United States, 127 S.Ct. 2456, 2465

(2007).  Again, Defendant's argument is procedurally barred and without merit as he

relies on erroneous premises.  First, he relies on his assertion that the court failed to

comply with Rule 32(i)(3)(B), which was discussed above.  Second, he relies again on

his misunderstanding with respect to the application of the former U.S.S.G.

§§ 2B1.1(b)(10) and 2B1.1(b)(9)(C).  Finally, he asserts that the district court's oral

pronouncement of sentence lacked an adequate explanation, as did the statement of

reasons. Defendant's recollection of what transpired at sentencing is faulty.

   Before imposing sentence, the district court heard argument or remarks from

defense counsel, Defendant, and the Government.  (ECF No. 92).  It also noted that it

had read the defense memorandum and the victim statements referred to by the

Government in its remarks.  (ECF. No. 92 at 10–11).  The court then told the parties that

it would tell them the sentence it was going to impose, explain the sentence, then

impose it.  (*Id.* at 12).  The court stated that Defendant's total sentence would be 87

months.  It acknowledged that the guidelines were advisory, and stated that it had

considered the guidelines range and all of the 3553(a) factors relating to the offense

and the offender.  (*Id.* at 13–14).  The court noted that in deciding upon an appropriate

sentence for Defendant,  there were factors that "cut each way."  For instance, it stated

that Defendant was young, bright and capable enough to be a productive, law abiding

citizen, but that Defendant nonetheless had a significant criminal record, having been

charged with a variety of offenses from a very young age.  (*Id.* at 14).  The court

recognized that Defendant had a very tough family background with an abusive father,

and that he had been removed from his home for neglect.  It also opined that, as noted

by the Government, the offense at issue was substantial, and even if Defendant did not

have a full understanding of the impact that this kind of offense has on the individuals

whose identity has been taken, it nonetheless had a very substantial impact.  (*Id.* at

14–15).  The court concluded that after looking at Defendant's record, the mitigating

circumstances, the nature of the offense and all of the 3553(a) factors, that a substantial

sentence was warranted, albeit one within the applicable guideline range.  (*Id.* at 16).  It

noted that it had not specifically addressed each of the 3553(a) factors and offered to do

so upon request, but otherwise stated that it would "leave the explanation right there."

(*Id.*).  Neither party requested additional clarification, and the court formally imposed its

sentence.  In light of this record, Defendant's suggestion that the court failed to make an

individualized assessment of his sentence could hardly be more mistaken.  He is not

entitled to relief.

Ground Five

Defendant next contends that his sentence on Counts One and Two was in excess of the maximum authorized by law, as argued in his first four grounds for relief. He also maintains that the BOP lacks authority to execute the sentence imposed by the court because the court never explained its reasoning for the imposition of that sentence.

In support of his argument, Defendant cites to section IV of the Statement of Reasons, which, argues the Government, appears to contain a scrivener's error.  The court checked Box A, which states that "The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart." (ECF No. 66 at 2).  It appears that the more appropriate selection would have been  Box B, which states "The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons."  (*Id.*).  The correct guidelines range is identified in section III.  (*Id.*).  The Government argues that the scrivener's error was harmless, was not misleading, and was counteracted by the court's allocution at sentencing as well as the remainder of the text in the Statement of Reasons and Judgment.  The undersigned concurs that there is no basis for relief on Ground Five.

Ground Six

In his sixth ground for relief, Defendant contends that both his trial and appellate counsel were constitutionally ineffective in their representation of him.  He asserts that Mr. Clark, who represented him in the district court, performed deficiently by allegedly

Case Nos.: 4:10cr96/RH/CAS; 4:13cv475/RH/CAS

allowing Defendant to be sentenced on "disputed facts."  However, as noted above in

the discussion of Ground One, counsel's objections to the loss amount and the number

of victims did not dispute the underlying facts of the case but rather to how the

guidelines applied to these facts.  Counsel stated that he filed the objection in the hope

that there would be some recent precedent that would be beneficial to his client. (ECF

No. 92 at 3).  When no such change resulted, counsel noted that he had nothing else to

offer, other than what he had previously stated.  There were no disputed facts for the

court to address. Instead it made a legal determination that the PSR had properly

calculated the applicable guidelines range in light of circuit precedent.  (*Id.* at 3–4).

Defendant next asserts that Chet Kaufman, who was appointed to represent him

on appeal had an actual conflict of interest because, like trial counsel, Kaufman worked

for the Public Defender.  Therefore, Defendant concludes, the reason that Kaufman filed

an Anders brief was to conceal trial counsel's deficient performance at sentencing,

rather than raise the "meritorious" issues Defendant now raises in the instant motion.

The record reflects that Defendant did not rely only on counsel's brief, but rather that he

submitted his own arguments on appeal challenging, among other things, the number of

victims, the loss amount and the imposition of the mandatory consecutive sentence for

aggravated identity theft.  (*See* ECF No. 138-2, 138-3).  A three-judge panel reviewed

both counsel's brief and Defendant's submissions and conducted an independent

review of the record, following which it determined that there were no arguable issues of

merit.  (ECF No. 131).

Ground Seven

Defendant's seventh ground for relief also relates to the performance of appellate counsel.  He claims that counsel should have challenged the number of victims, and that cases decided after his sentencing and appeal support his position.     Defendant received a six-level guidelines adjustment pursuant to § 2B1.1 of the guidelines because the offense conduct involved more than 250 victims.  (ECF No. 58, PSR ¶ 36). Defendant objected to the number of victims, claiming that the number of victims who actually suffered pecuniary loss as defined in Application Note 1 of § 2B1.1 was less than 20, because the number was limited to the sixteen banks associated with "Famous Dave's" activity and perhaps one additional bank in Crawfordville, Florida.  (*Id.* at ¶ 107). In response to this objection, the probation officer noted that Application Note 4(E), effective in November of 2009, had expanded the definition of "victim" in cases involving a "means of identification" to mean "any individual whose means of identification was used unlawfully or without authority," thus making clear that an individual's status as a "victim" was not dependent solely upon pecuniary loss.  (*Id.* at ¶ 108).  Similarly, the fact that a victim was reimbursed by a third party did not render them any less a victim. (*Id.*).

At Defendant's sentencing, the court referenced Application Note 4(E) in concluding that the cardholders were victims and therefore the number of victims had been correctly calculated.  (ECF No. 92 at 4).

On appeal, appellate counsel noted in his Anders brief that the court might wish to consider whether error was committed in the district court's calculation of victims.

(ECF No. 138-1 at 31).  In his submissions to the Eleventh Circuit Defendant himself

also raised the issue of the number of victims, contending that the individual

cardholders should not be counted as victims.  (ECF No. 138-2 at 2; ECF No. 138-3 at

1–3).[3]  However, the calculation of the number of cardholders was never at issue.

Defendant now asserts that the evidence shows that the only unlawfully obtained

personal information that was actually "used" was obtained from accounts related to the

Famous Dave's and Wakulla/Leon County fraud.  He claims that the number of victims

in these cases was less than 50, and he should have received only a two level

adjustment pursuant to § 2B1.1(b)(2).  Defendant distinguishes those accounts that he

possessed and never "used," from what he contends were the less than 50 accounts

from which he actually created fraudulent cards.   In support of his argument he cites a

case that was decided after he was sentenced, United States v. Hall, 704 F.3d 1317

(11th Cir. 2013). Hall involved a scheme in which the employee of a doctor's office

obtained the personal information of patients in the office and supplied it to

coconspirators who intended to create fraudulent accounts using the information.

Defendant Hall, who had transferred the personal identity information of 141 patients,

was attributed responsibility for 141 victims, although only twelve fraudulent accounts

were successfully created.  The Eleventh Circuit determined that the district court had

erred in its calculation of the number of victims and remanded the case, holding that in

---

[3]Defendant cited a case in which the Fifth Circuit concluded that an individual whose pecuniary loss had been reimbursed was not a victim. See United States v. Conner, 537 F.3d 480, 491–492 (5th Cir. 2008).  Conner, however, was decided before the 2009 enactment of Application Note 4(E) which expanded the definition of "victim" in cases involving means of identification.

order for an individual to be counted as a victim, something more than the unauthorized sale or transfer of the individual's identifying information must have occurred.  Hall, 704 at 1322–1323.  The issue presented in Hall, which of the individuals whose identities were potentially compromised actually were "victims" under the guidelines, has never been presented in Defendant's case.

The Government argues that Defendant waived the argument he now raises at sentencing because he did not dispute the number of cardholders.  Instead, his objection was focused on counting the cardholders as a group as victims.  There was no attempt, either at trial or on appeal, to distinguish cardholders whose information was used to create fraudulent cards from those whose information was not used in this manner.

Defendant points to a portion of the rearraignment transcript in which he disputes part of the information in the statement of facts.  The Statement of Facts indicated that the personal identification information and unauthorized access devices related to 305 individuals was attributable to Defendant Bishop, and that he had the unauthorized personal identification information of another 224 individuals in his email.  (ECF No. 34 at 4 n. 3, and at 5 n.6).  Defendant stated that he did not have credit card numbers for all of the individuals whose information was in his email.  The exchange was as follows:

THE COURT: All Right.  Now, there was a part of this, Mr. Bishop, that you told me was not true.  What's not true in here?

THE DEFENDANT: As far as all of the amount of people supposedly on my email weren't used, and they weren't – not all of those was credit card numbers.

THE COURT: All right.  So this has additional information about email – the written statement of facts says information about people in your email, and what you're telling me is that not all of those were used, and some didn't even have – you didn't even have credit card information for.  True?  Do I have that right?

THE DEFENDANT: some of them are credit card numbers, but they're publicly listed.  It's not like I was using those as credit cards.  It's like a BIN [bank identification number] list.

THE COURT: All right.  And so that the record will be clear, I should say this: We're going to talk about the United States Sentencing Guidelines here in just a minute.  The number of people involved and the amount of money involved, those are factors that affect calculation of the guideline range.  They don't affect the question of whether you're guilty of these charges or not.  So those are not issues I"m going to try to resolve today.  If there are disagreements about those facts, we'll address those at the sentencing hearing down the road.

(ECF No. 91 at 11–12).  Defendant did not raise any objection to the group of 305

individuals whose information and unauthorized access devices were attributed to him,

which number would have been sufficient to support the six-level adjustment.  (*See* ECF

No. 34 at 4 n.5).

In sum, the number of account holders whose personal information was

compromised was never at issue before the district court.  Defendant did not dispute

that the unauthorized possession of personal identification information and unauthorized

access devices belonging to 305 individuals was attributable to him. The appellate

court's independent review of the record found no issues of arguable merit.  As such,

Defendant cannot show that appellate counsel was constitutionally ineffective for his

failure to raise this issue on appeal after it was neither preserved in the district court nor

identified by the Eleventh Circuit as having merit.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 136) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 7th day of October, 2015.


/s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**